UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



BANK OF AMERICA INVESTMENT
SERVICES, INC.

        Plaintiff,

v.

                            Civil Action No. 2:09cv211

                            Civil Action No. 2:09cv212

MICHAEL A. BYRD,

        Defendant - 2:09cv211.

GREGORY F. HARRIS,

        Defendant - 2:09cv212.

## OPINION AND ORDER

These unconsolidated, but related, matters are before the Court on Plaintiff's Motion for Preliminary Injunction or Temporary Restraining Order.[1] Each Defendant filed a brief in opposition to Plaintiff's motion, and on the afternoon before the scheduled oral argument, Plaintiff filed reply briefs in each case.[2] On June 10, 2009, the Court held oral argument on

---

[1] Although the two civil actions listed in the caption have not been formally consolidated, both Defendants are represented by the same counsel and the allegations contained in the complaints and motions before the Court are largely duplicative. The only difference across such cases are the factual allegations regarding each Defendant's alleged conduct. Thus, although the Court conducted a consolidated hearing on Plaintiff's motions, the Court has independently considered the facts of each case.

[2] Plaintiff's reply brief in case 2:09cv211 appears to have been filed one-day late. However, as Defendant Byrd did not raise such issue, the Court exercises its discretion to consider such filing. Furthermore, the Court received, and considered, responsive affidavits produced by defense counsel immediately prior to the hearing on Plaintiff's motions.

Plaintiff's motions. After careful consideration of the parties' filings and oral arguments, for the

reasons set forth herein, the Court **DENIES** Plaintiff's motion seeking preliminary injunctive

relief in both Case No. 2:09cv211, and Case No. 2:09cv212.

## I. Factual Background

### A. Undisputed Facts Common to Both Cases

Defendants Michael Byrd ("Byrd") and Gregory Harris ("Harris"), (collectively

"Defendants"), were formerly employed as financial advisors in Norfolk, Virginia, by

Plaintiff, Banc of America Investment Services, Inc. ("BAI"). On March 20, 2009, both Byrd

and Harris resigned from BAI to join Wells Fargo Advisors, formerly known as Wachovia

Securities, LLC ("Wachovia"). Following his resignation, each Defendant telephoned former

BAI clients and, at a minimum,[3] informed such clients that he had left BAI and joined Wachovia.

During their employment at BAI, both Defendants signed two different agreements

prohibiting, among other things, former employees from soliciting certain BAI customers for one

year after separation from BAI. Specifically, by signing the "Code of Ethics Non-Solicit," a BAI

employee agrees that, to the fullest extent permitted by law:

> [H]e or she will not directly or indirectly solicit, invite, encourage or request any
> client or customer of the Company to whom he or she was introduced and/or for
> whom he or she worked, provided service or transacted business in the course and
> scope of his or her employment with [BAI], for the purpose of: obtaining that
> client or customers' business for himself or herself or any other person or entity,
> causing such client or customer to discontinue doing business with the Company

---

[3] As discussed in Parts B & C below, BAI contends that Defendants improperly solicited
BAI clients during such telephone calls in contravention of non-solicitation agreements they
entered while employed at BAI. Both Defendants deny such allegations and contend that they
telephoned select BAI customers, who they recalled from memory, and provided new contact
information.

2

or otherwise interfering with the relationship between such clients or customers and the Company.

(Reply Brief, Ex. B § 19.)[4]  Similarly, the BAI "Series-7 Non-Solicit" states:

[T]he former Associate agrees that, for a period of one year [after separation from BAI], the Associate may not and will not solicit or attempt to solicit any securities related business, directly or indirectly, from any of [BAI's] customers who were served by or whose names became known to the Associate while in the employ of [BAI].

(Injunction Brief, Ex. A § 17.)

In addition to the facts set forth above, the parties further agree that they are subject to and bound by the rules of conduct promulgated by the Financial Industry Regulatory Authority ("FINRA") and that the merits of the instant dispute involving purported post-employment solicitation are subject to mandatory and binding arbitration.  However, applicable employment agreements and the FINRA Code of Arbitration Procedure expressly provide that *preliminary injunctive relief* may be sought in a court of competent jurisdiction pending a final arbitral ruling. *See also Merrill Lynch v. Bradley*, 756 F.2d 1048, 1054 (4th Cir. 1985) (finding that the Federal Arbitration Act does not "preclude[] a district court from granting one party a preliminary injunction to preserve the status quo pending arbitration").  Accordingly, this matter is properly before the Court on Plaintiff's motions for preliminary injunctions.

### B.  Evidence Regarding Byrd (2:09cv211)

### 1.  Plaintiff's Evidence

Plaintiff's memorandum in support of its motion for a preliminary injunction against

---

[4] The signature page of the BAI Code of Ethics indicates that if the employee previously signed, or later signs, another Non-Compete or Non-Solicitation agreement, then the more restrictive of the two agreements shall be binding on such individual.

Defendant Byrd is supported by two affidavits, containing non-affiant statements, contending that

Byrd improperly solicited BAI clients.[5] First, the affidavit submitted by Wayne Creef, a BAI

Assistant Vice-President, states that Creef had telephone conversations with more than one

hundred BAI customers previously served by Byrd, and approximately fifty of such customers

stated that they were contacted by Byrd and encouraged to move their account to Wachovia.

(Injunction Brief, Ex. C ¶ 10.) Furthermore, Affiant Creef indicated that "[s]ome of these

customers received repeated calls even though they told Byrd they did not want to move their

account." (*Id.* ¶ 11.) Although Creef does not indicate that BAI lost a single account based on

Byrd's alleged solicitation, Creef states that some customers indicated an intent to move their

account following a solicitation call. (*Id.* ¶ 12.) Second, the affidavit submitted by Jennifer

Anders, a BAI Financial Advisor, states that she too called many of Byrd's former clients in

order to inform them that "their account would continue to be serviced by another financial

advisor in the same [BAI] office." (Injunction Brief, Ex. D ¶ 5.) Affiant Anders asserts that

"[o]n numerous occasions, BAI customers informed [Affiant Anders] that Byrd had already

called them to encourage them to move their account to Wachovia." (*Id.* ¶ 6.) In addition,

Affiant Anders contends that Byrd improperly used confidential BAI information in conjunction

with his solicitation of a customer in that he provided a Pacific Life annuity statement to that

customer "using a password provided to him by BAI for use for BAI's business." (*Id.* ¶ 9.)

---

[5] While affidavits are hearsay (unless they fall into a hearsay exception), in order to help
distinguish between affidavits primarily containing statements of someone other than the affiant
and those primarily containing statements of the affiant, the Court frequently refers to the former
as non-affiant statements (double hearsay), and the latter as affiant statements (hearsay), for
purposes of making relative weight distinctions. *See Rowland v. American General Finance,
Inc.*, 340 F.3d 187, 195 (4th Cir. 2003) (discussing double hearsay).

Affiants Creef and Anders both indicated that, if necessary, customer names could be provided and that each affiant could and would provide testimony consistent with the sworn statements. Although Plaintiff has the burden of proof with respect to the motion for a preliminary injunction before the Court, Plaintiff did not call upon Affiant Creef or Affiant Anders to testify at the injunction hearing.

### 2. Defendant Byrd's Evidence

Defendant Byrd submitted a responsive affidavit, which does not contain non-affiant statements, directly refuting the allegations asserted in Plaintiff's affidavits containing non-affiant statements. Specifically, Byrd admits to contacting his former clients and states that he felt obligated to inform his clients of a material change in account relationship and provide contact information in case they needed to reach him. (Byrd Brief in Opposition, Ex. A ¶¶ 6-7.) Byrd further indicates that he sent out a "very limited announcement card" to certain clients as a professional courtesy. (*Id.* ¶ 8.) However, Byrd maintains that he did "not solicit[] any such customers to move their accounts to Wachovia" nor does he have any intention of soliciting former BAI clients during the one-year period following his separation from BAI. (*Id.* ¶ 12.) Byrd's affidavit also states that Byrd did not repeatedly call any former clients, except those that requested follow up calls, and that he took specific steps to ensure that when he resigned from BAI he did not posses any confidential information, "including documents identifying BAI clients and their contact or account information." (*Id.* ¶¶ 13, 15.) Byrd further explains that the Pacific Life annuity statement referenced by Affiant Anders was printed at a customer's request, that the Pacific Life website does not contain any BAI information, and that even after joining Wachovia, Pacific Life has not changed Byrd's login or password. (*Id.* ¶ 12.)

### 3. Plaintiff's & Defendant Byrd's Rebuttals

Plaintiff provided rebuttal affidavits from Affiants Creef and Anders as well as a rebuttal affidavit from Kimberly Brunelle, a BAI Branch Operating Manger.[6] Although Plaintiff's rebuttal affidavits from Affiants Creef and Anders provide more customer specific details regarding Byrd's alleged solicitation, including customer names, such affidavits still rely on non-affiant statements. Furthermore, none of the affidavits submitted by BAI alleges that BAI lost a single customer account to Wachovia based on Byrd's alleged improper solicitation.

At the hearing on Plaintiff's motions, Defendant Byrd provided a second affidavit responding to BAI's rebuttal affidavits that were filed the day before the hearing. Byrd's responsive affidavit disputes the accuracy of the non-affiant statements contained in Plaintiff's affidavits and specifically explains his contact and conversations with some of the clients identified in Plaintiff's affidavits. (Byrd Affidavit, Dkt. No. 17.) Additionally, Byrd submitted an affidavit from Jeffery Taylor, a Wachovia Senior Vice President, containing affiant statements. Affiant Taylor indicates that Wachovia instructed Byrd not to retain any BAI documents, not to solicit any former clients, and that Affiant Taylor "personally sat in on telephone calls [Byrd] made to [former] clients informing them of [his] departure from BAI and employment with Wachovia." (Taylor Affidavit ¶ 5, Dkt. No. 18.) During these calls, Affiant Taylor "did not hear [Byrd] encourage or ask customers to transfer their accounts to Wachovia." (*Id.*)

---

[6] The Brunelle affidavit primarily discusses the allegations involving the Pacific Life annuity statement.

### C. Evidence Regarding Harris (2:09cv212)

#### 1. Plaintiff's Evidence

Plaintiff's memorandum in support of its motion for a preliminary injunction against Defendant Harris is supported by one affidavit, containing non-affiant statements, contending that Harris improperly solicited BAI clients. The attached affidavit was submitted by Wayne Creef, a BAI Assistant Vice-President, stating that Affiant Creef was required to call Harris' former customers to inform them that a new BAI financial advisor would now handle their account. In "many" of these calls, Affiant Creef asserts that the customer indicated that they were previously contacted by Harris and encouraged to move their account to Wachovia. (Injunction Brief, Ex. C ¶ 9.) Affiant Creef does not allege that BAI lost a single customer as a result of such alleged improper solicitation.

Affiant Creef further claims that an unnamed client that Creef represents indicated that Harris called her "for the purpose of moving her account to Wachovia." (*Id.* ¶¶ 10-11.) Not only does such allegation purportedly involve improper solicitation, but Affiant Creef contends that Harris accessed confidential BAI customer information to identify this woman as a BAI client. (*Id.* ¶ 12.) As with Defendant Byrd, Affiant Creef indicates that customer names can be provided and that he is willing to testify consistent with his sworn statements. Although Plaintiff has the burden of proof with respect to the injunction, Plaintiff did not call upon Affiant Creef to testify at the injunction hearing.

#### 2. Defendant Harris' Evidence

Defendant Harris submitted an affidavit containing affiant statements directly refuting the allegations asserted in Plaintiff's affidavit relying on non-affiant statements. Specifically, Harris,

like Byrd, freely admits to contacting former clients to inform them of his departure from BAI
and to provide limited contact information. (Harris Brief in Opposition, Ex. A ¶¶ 6-7.) Harris
likewise sent out a "very limited announcement card" to certain clients as a professional courtesy.
(*Id.* ¶ 8.) Harris also maintains that he did "not solicit[] any such customers to move their
accounts to Wachovia" nor does he have any intention of soliciting former BAI clients during the
one-year period following his separation from BAI. (*Id.* ¶ 12.) Harris' affidavit directly refutes
Creef's suggestion that he improperly possessed confidential BAI customer lists or information
and provides context to Harris' relationship with the unidentified woman to whom Creef appears
to be referring in his affidavit. (*Id.* ¶ 14.)

### 3. Plaintiff's & Defendant Harris' Rebuttals

Plaintiff provided rebuttal affidavits from Kimberly Brunelle, a BAI Branch Operating
Manager, and Dolores Jones, the BAI client that was discussed, but not named, in Creef's
affidavit. Affiant Brunelle merely discusses the fact that Harris signed and reviewed the non-
solicitation agreements. Affiant Jones provides a summary of her phone conversation with
Harris after he left BAI. She alleges that Harris "told [her] that he would be happy to transfer
[her] investments to Wachovia and asked [her] if he could do that for [her]." (Reply Brief, Ex. F
¶ 4.) Affiant Jones told Harris that she did not wish to transfer her accounts. (*Id.*)

At the hearing on Plaintiff's motions, Defendant Harris provided a second affidavit
responding to BAI's rebuttal affidavits that were filed the day before the hearing. Harris'
responsive affidavit indicates: (1) that Affiant Jones is the mother-in-law of a BAI branch
manager; and (2) that he "did not offer to transfer Ms. Jones' investments to Wachovia." (Harris

8

Affidavit ¶ 5, Dkt. No. 17.)  Additionally, Harris submitted an affidavit from Jeffery Taylor, a

Wachovia Senior Vice President, containing affiant statements.  Affiant Taylor indicates that

Wachovia instructed Harris not to retain any BAI documents, not to solicit any former clients,

and that Affiant Taylor "personally sat in on telephone calls [Harris] made to [former] clients

informing them of [his] departure from BAI and employment with Wachovia."  (Taylor Affidavit

¶ 5, Byrd Dkt. No. 18.)  During these calls, Affiant Taylor "did not hear [Harris] encourage or

ask customers to transfer their accounts to Wachovia."  (*Id.*)

## II. Preliminary Injunction Standard

Rule 65 of the Federal Rules of Civil Procedure governs the procedure for issuing

preliminary injunctions and temporary restraining orders.  Fed. R. Civ. P. 65.  The issuance of a

preliminary injunction is "an extraordinary remedy" which should only be granted if "the moving

party *clearly establishes* entitlement to the relief sought."  *Hughes Network Systems, Inc. v.*

*InterDigital Communications Corp.*, 17 F.3d 691, 693 (4th Cir. 1994) (quoting *Federal Leasing,*

*Inc. v. Underwriters at Lloyd's*, 650 F.2d 495, 499 (4th Cir. 1981)) (emphasis added).

Acknowledging that ruling on a motion seeking a preliminary injunction requires the district

court to act "on an incomplete record," the Fourth Circuit has noted that the "'danger of a

mistake' in this setting 'is substantial.'"  *Id.* (quoting *American Hosp. Supply Corp. v. Hospital*

*Prods., Ltd.*, 780 F.2d 589, 593 (7th Cir. 1986)).  Preliminary injunctions "create other problems"

as well, including repetitive litigation, and courts have therefore "insisted that the harm necessary

to justify issuance of a preliminary injunction be irreparable."  *Id.* at 693-94.  Accordingly,

"[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended

in the absence of a stay, are not enough."  *Id.* at 694 (quoting *Sampson v. Murray*, 415 U.S. 61,

90 (1974)).

In determining whether to issue a preliminary injunction, this Court must apply the

familiar four factor *Blackwelder* test, which considers:  (1) the likelihood of irreparable harm to

the plaintiff should the court refuse to grant the injunction; (2) the likelihood of harm to the

defendant should the court grant the injunction; (3) the likelihood that the plaintiff will succeed

on the merits; and (4) the public interest. *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d

189, 193 (4th Cir. 1977); *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th

Cir. 1991).  The Fourth Circuit has recently explained the application of the first three factors of

the *Blackwelder* test as follows:

> When deciding whether to grant a preliminary injunction, the court must first
> determine whether the plaintiff has made a strong showing of irreparable harm if
> the injunction is denied; if such a showing is made, the court must then balance
> the likelihood of harm to the plaintiff against the likelihood of harm to the
> defendant.  If the balance of the hardships "tips decidedly in favor of the
> plaintiff," *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir.
> 1991) (internal quotation marks omitted), then typically it will "be enough that the
> plaintiff has raised questions going to the merits so serious, substantial, difficult
> and doubtful, as to make them fair ground for litigation and thus for more
> deliberate investigation," *Blackwelder*, 550 F.2d at 195 (internal quotation marks
> omitted).  But if the balance of hardships is substantially equal as between the
> plaintiff and defendant, then "the probability of success begins to assume real
> significance, and interim relief is more likely to require a clear showing of a
> likelihood of success." *Direx*, 952 F.2d at 808 (internal quotation marks omitted).

*Scotts Co. v. United Industries Corp.*, 315 F.3d 264, 271 (4th Cir. 2002) (citations omitted); *see*

*Manning v. Hunt*, 119 F.3d 254, 263-64 (4th Cir. 1997) (indicating that the first two prongs are

the "most important" and that "the balancing of hardships must be made before reaching the

question of likelihood of success on the merits, because '[u]ntil that balance of harm has been

made, the district judge cannot know how strong and substantial must be the plaintiff's showing

of 'likelihood of success.'") (quoting *Direx*, 952 F.2d at 812); *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991) ("As the balance tips away from the plaintiff, a stronger showing on the merits is required.").[7] Finally, after conducting the balancing of the first two factors and determining and applying the requisite showing on the third factor, the court must consider the public interest.

### III. Discussion

### A. Irreparable Harm

As noted above, "the court must first determine whether the plaintiff has made a strong showing of irreparable harm if the injunction is denied . . . ." *Scotts Co.*, 315 F.3d at 271. On these facts, the Court finds that Plaintiff has failed to make such a showing.

Although the Fourth Circuit has recognized that a former customer "cannot be 'unsolicited'" and that money damages in compensation for lost customers may not provide complete relief because "the prevailing party's damages may be too speculative," the Fourth Circuit has not held that damages from improper solicitation will always be irreparable. *Bradley*, 756 F.2d at 1054 (emphasis added). Plaintiffs therefore retain the burden of establishing that the harm suffered as a result of solicitation in a given case amounts to irreparable harm.

Many years after the Fourth Circuit's *Bradley* opinion, in *Prudential Securities, Inc. v. Plunkett*, 8 F. Supp. 2d 514 (E.D. Va. 1998) (applying New York law), a case involving lost

---

[7] The Fourth Circuit noted in *Scotts Co.* that the *Blackwelder* test has been criticized, including by members of the Fourth Circuit, as placing too much emphasis on the balancing of harms rather than the likelihood of success. However, the Fourth Circuit declined an invitation to revisit its prior precedent on such issue, indicating that only the Fourth Circuit sitting en banc, or the Supreme Court, could overrule such established standard. *Scotts Co.*, 315 F.3d at 271 n.2.

investment customers, the court held that "the loss of commissions on accounts that switched" to

a competing investment firm based on improper solicitation "can be quantified." *Id.* at 519.

Furthermore, although the court acknowledged that a company *can suffer* irreparable harm based

on damage to its reputation or goodwill, the plaintiff "presented no evidence that its reputation or

goodwill would be harmed" if the defendant continued to contact former customers. *Id.*

Likewise, the plaintiff "presented no evidence that [the defendant] confiscated mailing lists,

computer disks with confidential information on clients or any [of the plaintiff's] documents that

could be used to [the plaintiff's] detriment." *Id.* Accordingly, the *Plunkett* court held that the

plaintiff failed to establish irreparable harm.

     In *Safeway Inc. v. CESC Plaza Ltd. Partnership*, 261 F. Supp. 2d 439, 471 (E.D. Va.

2003), a case involving permanent injunctive relief, the court provided an in depth analysis

rejecting the plaintiff's claim that Fourth Circuit precedent established that lost customers

necessarily equated with irreparable harm.  The district court stated:

> Although *Multi-Channel* and *Blackwelder* contain broad language regarding the
> availability of injunctive relief when the loss of future customers or harm to
> goodwill renders the calculation of damages difficult, neither holds that injunctive
> relief is automatic and required in such circumstances. Thus, the *Multi-Channel*
> opinion states that when the failure to grant an injunction "creates the possibility
> of permanent loss of customers to a competitor or the loss of goodwill, the
> irreparable injury prong is satisfied." *Multi-Channel*, 22 F.3d at 552 (citing
> Bradley, 756 F.2d at 1055). The *Blackwelder* opinion holds that "[i]rreparability
> of harm includes the impossibility of ascertaining with any accuracy the extent of
> the loss." *Blackwelder*, 550 F.2d at 197.  Yet, in both cases the Fourth Circuit
> proceeds to analyze the specific facts of the case before determining that the loss
> of future customers or the harm to goodwill makes damages difficult to ascertain.
>
> . . .
>
> In sum, [Plaintiff's] reliance on *Multi-Channel* and *Blackwelder* to support its
> arguments that damages are inadequate is misplaced.  Neither case teaches that an
> injunction is always appropriate whenever there is a showing of a likely loss of

> future customers or harm to goodwill. After all, breaches of lease or contract often result in the loss of future business and cause harm to goodwill. If injunctions were appropriate in all such cases, injunctive relief would cease to be an "extraordinary" remedy, and would be available in virtually every case involving a breach of an agreement that affects future business. *Multi-Channel* and *Blackwelder* require no such result. Absent any specific, persuasive evidence showing that the damages here will be especially difficult to calculate, or that Plaintiff is threatened with a loss of goodwill that is significant but incalculable, Plaintiff is not entitled to permanent injunctive relief.

*Id.* at 469-71 (emphasis added). Here, as discussed below, the Court finds that Plaintiff has failed to carry its burden of making a strong showing of irreparable harm.

First, factually, Plaintiff has not made a strong showing that either Byrd or Harris violated the non-solicitation clauses of his contracts with BAI. As to Defendant Byrd, Plaintiff has not only relied entirely on non-affiant statements as evidence of solicitation, but Plaintiff presented such minimally persuasive evidence only via affidavit. *See H.J. Meyers & Co. v. Euripides*, 2:96cv172, 1996 U.S. Dist. Lexis 17217, at * 7 (E.D. Va. Mar. 18, 1996) ("An affidavit in support of a temporary restraining order can be based on hearsay. However, the fact that the affidavit is based on hearsay is a factor in determining the evidentiary weight of the affidavit."); *Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*, 1:08cv955, 2009 U.S. Dist. LEXIS 1937, at *7-9 (E.D. Va. Jan. 13, 2009) (unpublished) (quoting *Vondran v. McLinn*, No. C 95-20296, 1995 U.S. Dist. LEXIS 21974, at *11 (N.D. Ca. July 5, 1995)) (stating that although hearsay evidence can be considered at the preliminary injunction stage, courts have nonetheless refused to consider declarations where "[n]othing in the declarations offered by Defendants suggests that the declarants have personal knowledge of [the plaintiff's] conduct . . ."). Byrd has rebutted the non-affiant allegations with direct affiant evidence in the form of his affidavit and

the affidavit of Jeffrey Taylor.[8]

The same analysis and findings above applies to Defendant Harris with respect to the allegations advanced by Affiant Creef. Additionally, the weight afforded Affiant Creef's affidavit against Harris is further reduced by the fact that Creef alleges improperly seized customer lists through supposition and inference, and Harris provides specific facts convincingly refuting such allegation. As to the affidavit of Dolores Jones, the only direct affiant evidence of solicitation offered against Harris, the Court declines to place great weight on such evidence as it directly conflicts with Harris' affidavits and Plaintiff did not produce such witness, or produce other corroborating evidence, that permit the Court to make the necessary credibility determination. Although Defendant Harris' statements are self-serving, as are Affiant Taylor's to some degree, Plaintiff's Affiant Jones is closely related to a BAI branch manager which raises similar questions as to her motives. Ultimately, because Plaintiff bears the burden of proof and fails to establish why Jones' affidavit should be believed over Harris', the Court finds that Plaintiff fails to establish that Harris violated the non-solicitation agreements.

Second, even if the Court gave greater weight to the non-affiant statements discussed above and/or fully credited the Jones affidavit against Harris, the Court would nevertheless conclude that Plaintiff fails to make a "strong showing" of irreparable harm. Plaintiff offers no evidence of loss of goodwill, damage to its reputation, the past loss of a single customer to Wachovia based on Defendants' alleged solicitation, or the likelihood of the future loss of

---

[8] The Court further finds that Plaintiff failed to establish any wrongdoing with respect to the Pacific Life statement and password. Since injunctive relief is an extraordinary remedy, plaintiffs carry a heavy burden, and here, Plaintiff's limited evidence regarding purported misuse of the Pacific Life password is insufficient to establish misappropriation of BAI's confidential information.

14

customers based on the same. *See Scotts Co.*, 315 F.3d at 283 (quoting *Direx,* 952 F.2d at 812)

("[T]he required irreparable harm must be neither remote nor speculative, but actual and

imminent."). Plaintiff likewise offers no credible evidence establishing, or even supporting the

inference, that either Defendant has in his possession BAI customer lists or other confidential

BAI information. Plaintiff also fails to establish that, *on these facts*, money damages are an

insufficient remedy. *Plunkett*, 8 F. Supp. 2d at 518;[9] *Safeway*, 261 F. Supp. 2d at 471. Thus,

although a customer cannot be "unsolicited," and a lost customer *may be* irreplaceable and the

harm suffered from such loss *may be* irreparable, here, Plaintiff simply failed to advance

evidence suggesting that: (1) it *has suffered* damages; (2) it *will suffer* damages; or (3) even if it

has or will suffer damages, that such damages are irreparable.[10] *See Safeway*, 261 F. Supp. 2d at

471 (indicating that plaintiff must do more than show that it has lost or will lose customers to

establish irreparable harm). Accordingly, Plaintiff fails to establish that it faces actual and

imminent irreparable harm should the Court deny its motions for preliminary injunctive relief.

---

[9] In *Plunkett*, the district court not only heard live testimony at the injunction hearing, but had before it evidence indicating that one-third of the defendant's former clients transferred their investment accounts to the defendant's new employer. The court still declined to issue an injunction because the commissions from such lost customers could be quantified. In contrast, here, there was no live testimony and no evidence whatsoever of a single lost account even though the alleged solicitation purportedly began nearly three months ago.

[10] Plaintiff repeatedly suggested at oral argument that Defendants should have done more to prove that they did not violate the non-solicitation agreements at issue. However, such position ignores the fact that Plaintiff has the burden of establishing the propriety of the extraordinary remedy that it seeks here. For example, at oral argument, Plaintiff questioned why Defendants were not present to testify, yet Plaintiff, who carries the burden, did not call a single witness in support of its motion for an injunction. Similarly, Plaintiff orally challenged each Defendant's failure to produce the written announcement that he sent to former clients. However, although production of such announcement would have been good practice, Plaintiff never alleged that such announcements contained any improper communication.

## B. Balance of Hardships

As discussed above, because Plaintiff fails to establish irreparable harm, the balance of the harms does not tip in Plaintiff's favor since even if improper solicitation occurred in the past, there is no evidence suggesting that Defendants will continue to solicit BAI customers or that even if Defendant's followed such a course, that BAI would suffer harm that cannot be compensated with money damages. A Court order constraining the conduct of Byrd or Harris, such as an order prohibiting affirmative contact with any former clients with whom such Defendant previously announced his departure from BAI,[11] is therefore an unnecessary restriction. As discussed more thoroughly below in Part III.D of this Opinion, an improvidently granted injunction could prevent personal communications wholly unrelated to business between Defendants and individuals with whom Defendants have long-term personal relationships. Furthermore, even without an injunction, each Defendant remains bound to adhere to the requirements of any enforceable non-solicitation agreement that he signed, and it is for the arbitration panel to determine the enforceability of such contracts, whether Defendants violated them, and the appropriate remedy for any such violations. Accordingly, the Court finds that the balance of hardships either favors Defendants or is "substantially equal." *See Scotts Co.*, 315 F.3d 284-85 (indicating that the "real issue" when balancing the harms "is the degree of harm that will be suffered by the plaintiff or the defendant if the injunction is improperly granted or denied," and concluding that where, "relatively little harm would befall either side if the preliminary injunction issue were improperly decided against it" the plaintiff was required to make a stronger showing of success on the merits to obtain interim injunctive relief).

---

[11] Such relief is requested in Plaintiff's proposed injunction order.

16

### C. Likelihood of Success on the Merits

The applicable standard regarding the likelihood of success on the merits is dictated by the balancing of harms. Here, as Plaintiff fails to establish that the balance of harms tips "decidedly" in its favor, interim injunctive relief requires "*a clear showing* of a likelihood of success." *Scotts Co.*, 315 F.3d at 271 (quoting *Direx*, 952 F.2d at 808) (emphasis added). A review of the record reveals that Plaintiff has not made such a clear showing. First, as noted above, Plaintiff has failed to offer reliable evidence establishing that either Byrd or Harris violated one, or both, non-solicitation clause(s) before the Court. *See Wachovia Securities v. Gates,* 3:08cv226, 2008 US Dist. Lexis 32895, at *9-10 (E.D. Va. April 21, 2008) (unpublished) (finding that the plaintiffs' allegations were based largely on speculation and that "plaintiffs have not identified any customers who transferred their accounts to [defendant] Banc of America as a result of the defendants' alleged activity, nor have they provided any compelling proof of any other wrongdoing by the defendants"). Second, although the Court makes no finding with respect to such matter, Defendants have raised at least some doubt as to the enforceability of the two non-solicitation clauses barring former BAI brokers from soliciting past clients as such clauses may be ambiguous and/or overbroad. *See Nortec Communications, Inc. v. Lee-Llacer*, 548 F. Supp. 2d 226, 231 (E.D. Va. 2008) (finding the non-solicitation agreement before the court both overbroad and ambiguous and noting that the non-solicitation clause contained "ambiguous phrases such as 'urge or suggest,' 'solicit, encourage or induce' and 'interfere with or disrupt'"). Accordingly, Plaintiff has failed, at this time, to make a "clear showing" of the likelihood of success on the merits.

17

### D. Public Interest

Determining whether an injunction is in the public interest is impacted by the breadth of

the injunction sought since the reach of the injunction dictates the impact felt by the public.

Here, although Plaintiff suggested at oral argument that it would be satisfied with a narrow

injunction barring Defendants from any "solicitation" of certain BAI customers, the proposed

injunction submitted by Plaintiff the day before such hearing broadly defines "solicitation."

Specifically, the proposed order defines solicitation as "any affirmative contact initiated by

Defendant, or any person on their behalf, to [BAI] customers, who they have already contacted

previously and informed that they are no longer working at BAI." (Reply Brief, Ex. G ¶ 1(b).)

Such request for relief is overbroad since it would encompass harmless contact between

Defendants and former clients wholly unrelated to business matters.[12]  Furthermore, as explained

in *Plunkett*:

> If the Court interpreted "solicitation" as proscribing communication between [the
> plaintiff] and his former Prudential clients, the clients might be prejudiced.  A
> broker-client relationship, like a lawyer-client or doctor-patient relationship, is a
> *personal relationship dependent on personal trust*.  Clients should be free to deal
> with the broker of their choosing and not subjected to the turnover of their
> accounts to brokers associated with the firm but unfamiliar to the client, unless the
> client gives *informed consent* to the turnover.

*Plunkett*, 8 F. Supp. 2d at 520; *see also Gates*, 2008 US Dist. Lexis 32895, at *10 (noting that

customers are not parties to the non-solicitation agreements and should have the right to deal

with whomever they choose, and that relief that restricts customers' choices does not serve the

---

[12] For example, Byrd states in his affidavit that one of the individuals he allegedly
solicited was his High School Government teacher who he has known for years.  It appears
starkly against the public interest to prohibit *any affirmative contact* between Byrd and
individuals who may be friends, family, or at a minimum long time customers with whom he has
developed a personal relationship.

public interest).

Here, the Court finds that regardless of whether Byrd or Harris previously passed along his contact information to a former client, there are an infinite number of harmless communications that could occur between Defendants and their former clients because, as noted in *Plunkett*, a broker-client relationship is "a personal relationship." *Plunkett*, 8 F. Supp. 2d at 520. Accordingly, although Defendants must not engage in any contact that involves solicitation in contravention of any enforceable contractual agreement, it is against the public interest to prohibit harmless communications based on a prior personal relationship. Furthermore, since the Court has "determined that [Plaintiff] has not, at least at this juncture, established a likelihood of success on its [improper solicitation allegations], [it] cannot conclude that public interest weighs in favor of the issuance of an injunction." *Scotts Co.*, 315 F.3d at 286.[13]

### IV. Conclusion

As discussed more fully above, after reviewing the record in both cases before the Court, as well as considering the arguments presented at the June 10, 2009 hearing, the Court concludes that application of the *Blackwelder* injunction factors to the facts before the Court reveals that a preliminary injunction should not issue against either Defendant Byrd or Defendant Harris. Accordingly, the Court **DENIES** Plaintiff's motions seeking a preliminary injunction, or other interim relief, in both Case No. 2:09cv211, and Case No. 2:09cv212.

---

[13] Although the Court recognizes that it is in the public interest to enforce valid contractual provisions, including reasonable restrictions on the use of confidential business information, because Plaintiff fails to make a clear showing of violations of the non-solicitation clauses before the Court, issuing an injunction is not in the public interest.

19

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ Mark

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
June  13 , 2009